FILED
APR 06 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOROTHEA M. RUSSELL,
Plaintiff,

v.

MORTGAGE SOLUTIONS MANAGEMENT,
INC., BIDDLE ENTERPRISES INC., MCKEE
FINANCIAL GROUP INC., PACIFIC FIRST
FINANCIAL GROUP LLC, DIAMOND
INVESTMENT GROUP CORP., CURT
KIMSEY, COUNTRYWIDE HOME LOANS, INC.,
DOES 1-10, LINCOLN GENERAL INSURANCE
COMPANY, BANK OF NEW YORK MELLON,
and TICOR TITLE COMPANY OF OREGON,
Defendants.

CV 08-1092-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

Plaintiff Dorothea M. Russell filed this action against defendants Mortgage Solutions Management, Inc., Biddle Enterprises Inc., McKee Financial Group Inc., Pacific First Financial Group LLC, Diamond Investment Group Corporation, and Curt Kimsey on September 18, 2008, alleging claims under the Fair Housing Act, the Oregon Elderly Persons and Disabled Persons Abuse Prevention Act, and the common law of fraud. On March 2, 2009, Russell amended her complaint, adding Countrywide Homes, Inc., as an additional defendant, and to add a claim for

Page 1 - FINDINGS AND RECOMMENDATION AND ORDER

violation of the Truth in Lending Act. On June 29, 2009, Russell amended her complaint again, adding ten fictitiously named Doe defendants and alleging additional claims under Oregon's usury statute and the Oregon Mortgage Broker and Banker Act. Russell amended her complaint a third time on August 13, 2009, withdrawing her claim under the Mortgage Broker and Banker Act, and a fourth time on September 28, 2009, adding Lincoln General Insurance Company, Bank of New York Mellon, and Ticor Title Company of Oregon as additional defendants.

Now before the court is the motion (#62) to dismiss, and in the alternative to strike, filed by defendants Countrywide Home Loans, Inc. ("Countrywide"), and Bank of New York Mellon ("BONY"). I have considered these defendants' motion, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, I recommend that the motion be denied in part and granted in part, as discussed below.

## LEGAL STANDARDS

### I. Motion to Dismiss for Failure to State a Claim

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id., quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the

Page 2 - FINDINGS AND RECOMMENDATION AND ORDER

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), *citing Iqbal*, 129 S. Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

**II.    Motion to Strike**

Federal Civil Procedure Rule 12 provides that the district courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on their own initiative or pursuant to a party's motion. Fed. R. Civ. P. 12(f). The disposition of a motion to strike is within the discretion of the district court. *See Federal Sav. & Loan Ins. Corp. v. Gemini Management*, 921 F.2d 241, 244 (9th Cir. 1990). Motions to strike are disfavored and infrequently granted. *See Stabilisierungsfonds Fur Wein v. Kaiser, Stuhl Wind Distribs. Pty.,*

Page 3 - FINDINGS AND RECOMMENDATION AND ORDER

*Ltd.*, 647 F.2d 200, 201, 201 n.1 (D.C. Cir. 1981); *Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990), abrogated on other grounds by *Stanton Road Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

## FACTUAL BACKGROUND

Plaintiff Russell is a 67-year-old disabled woman who suffers from cognitive impairments that allegedly make it difficult for her to read and understand complex documents. At all material times, Russell has owned and resided in a house located at 5315 N. Kerby in Portland, Oregon. Defendant Countrywide Home Loans, Inc. (now known as Bank of America Home Loans) is a diversified financial marketing and service holding company engaged primarily in residential mortgage banking and related businesses. Defendant Bank of New York Mellon is a global financial services company formed when The Bank of New York merged with Mellon Financial Corporation in July 2007. Among other things, BONY provides broker-dealer and advisory services.

### I.     History of the Parties' Dispute

According to the allegations of Russell's fourth amended complaint, defendant Curt Kimsey approached Russell in 2006 on behalf of defendants Mortgage Solutions Management and Pacific First Financial Group to discuss refinancing Russell's home mortgage. Kimsey promised Russell a new mortgage that would require monthly payments of $800 or less. On or around September 29, 2006, Russell refinanced her home mortgage, with Mortgage Solutions Management as the lender. Contrary to the assurances Russell had received, the new mortgage required Russell to make monthly payments of approximately $1,600. Some of the loan documents and disclosures produced in connection with the refinancing, including Truth in

Lending Act disclosures, were inconsistent, inaccurate, and/or misleading.

Subsequently, Mortgage Solutions Management assigned its interest in Russell's mortgage to defendant Countrywide Home Loans and/or to BONY (collectively, the "assignee defendants").

On or around June 29, 2007, Kimsey again approached Russell, this time on behalf of defendants Biddle Enterprises, Pacific First Financial Group, and McKee Financial Group, in connection with a proposed loan to Russell to help her make one of her monthly mortgage payments. The terms of the proposed loan were usurious. A promissory note was signed and a trust deed recorded in November 2007 in connection with the loan transaction.

Russell now alleges that both the September 2006 refinancing and the November 2007 loan were part of a continuing scheme to defraud her of the value of her equity in her home.

## II. Allegations Underlying Russell's Claims Against the Assignee Defendants

Against assignee defendants Countrywide and BONY, Russell alleges only a single claim for relief, for violation of the Truth in Lending Act ("TILA"). In support of her TILA claim against the assignee defendants, Russell alleges as follows:

> 41.
> Plaintiff's 2006 loan originated by [Mortgage Solutions Management] and, on information and belief, assigned to Countrywide, is a consumer credit transaction subject to the plaintiff's right of rescission pursuant to TILA, 15 USC § 1635, and Regulation Z, 12 CFR § 226.23.
>
> 42.
> At the consummation of the refinanced loan transaction, [Mortgage Solutions Management] failed to deliver to plaintiff two correctly dated copies of the Notice of Right to Cancel required by TILA. Accordingly, [Mortgage Solutions Management] failed to clearly and conspicuously disclose plaintiff's unqualified three-day rescission right, in violation of 12 CFR § 226.15(b)(5).

Page 5 - FINDINGS AND RECOMMENDATION AND ORDER

43.

Pursuant to 15 USC §1635(a) and 12 CFR § 226.23(a)(3), the plaintiff had a continuing right to rescind the consolidated transaction for up to three years following the loan's consummation.

44.

On November 21, 2008, the plaintiff rescinded her mortgage under the Truth in Lending Act, 15 USC § 1635, through a rescission demand letter sent by certified mail to defendants [Mortgage Solutions Management] and Countrywide, and to Recontrust Company and MERS, Inc. On or about September 2, 2009, plaintiff notified BONY and Bank of America, NA, of her previous rescission of the loan and affirmed that rescission as against the subsequent assignees and current holder. More than 20 calendar days have passed since the defendants were issued a copy of plaintiff's notice of rescission.

45.

The defendants have not returned the plaintiff's moneys, as required by 15 USC § 1635(b) and 12 CFR § 226.23(d)(2).12.

As a result of the aforesaid violations of TILA, pursuant to 15 USC § 1635(b), 1640(a) , defendant [Mortgage Solutions Management] is liable to plaintiff for its failure to comply with TILA's procedures for rescission. Defendants Countrywide and/or BONY are liable as assignee(s) of the transaction, in accord with 15 USC §1641(c), to the same extent as [Mortgage Solutions Management] for the following:

- A. Return of any money or property given by the plaintiff to anyone in connection with this transaction, including all loan fees and costs paid in connection with the loan and all payments made by plaintiff.

- B. Statutory damages of up to $4,000.00.

- C. Reasonable attorney fees and costs.

Fourth Amended Complaint, ¶¶ 41-45.

## ANALYSIS

Assignee defendants Countrywide and BONY argue that the claim against them should be dismissed on the ground that Russell has not pled her ability and willingness to tender back the

Page 6 - FINDINGS AND RECOMMENDATION AND ORDER

proceeds of the mortgage that she received in connection with the refinancing of her home, which they characterize as an essential prerequisite to the relief Russell seeks. In the alternative, the assignee defendants argue that Russell's prayer for statutory damages and for attorney fees against them should be stricken on the ground that Russell has not pled that the alleged violation of TILA was apparent on the face of the refinancing documents, which they characterize as an essential prerequisite for any finding of assignee liability for damages or fees under TILA.

## I. Failure to Plead Ability and Willingness to Tender Back Loan Proceeds

The Truth in Lending Act requires lenders in consumer credit transactions to make clear disclosure of the key terms of the proposed transactions, *see* 15 U.S.C. § 1601 *et seq.*, including disclosure of a consumer's right to rescind any such transaction secured by the consumer's principal dwelling at any time within three days "following the consummation of the transaction or the delivery of the [required] information and rescission forms . . . , whichever is later," *see* 15 U.S.C. § 1635(a). When a consumer exercises the Section 1635(a) right to rescission, the consumer is not liable for any finance charge, and any security interest in the consumer's residence created in connection with the rescinded transaction becomes void. *See* 15 U.S.C. § 1635(b). The statute further provides that, within twenty days of receiving a notice of rescission, a creditor must return any money or property received pursuant to the rescinded transaction and must take all appropriate action to reflect termination of the creditor's security interest. *See id.* Upon the creditor's performance of its rescission-related obligations, the consumer is required to tender back to the creditor the loan proceeds advanced to or on behalf of the consumer in connection with the rescinded transaction. *See id.* However, the statute further provides that the foregoing procedures may be modified by court order. *See id.*

Page 7 - FINDINGS AND RECOMMENDATION AND ORDER

In 2003, the Ninth Circuit affirmed that courts have discretion to modify the rescission-related procedures provided in Section 1635(b), including by conditioning a consumer's right to rescission on evidence or allegation of the consumer's willingness and ability to tender back the loan proceeds the consumer received in connection with the transaction to be rescinded. *See Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003) (because TILA contains a "provision permitting a court to modify procedures . . . in applying TILA, a trial judge has the discretion to condition rescission on tender by the borrower of the property he had received from the lender" (citation, internal quotation marks omitted)).

Since 2003, some district courts have responded to *Yamamoto* by requiring TILA plaintiffs to plead willingness and ability to tender back loan proceeds before permitting them to rescind credit transactions. *See, e.g., Edelman v. Bank of Am. Corp.*, Case No. 09-309-CJC, 2009 U.S. Dist. LEXIS 122712, *4-5 (C.D. Cal. April 17, 2009) ("[plaintiff] has not stated a claim for rescission under TILA because she has failed to allege in her Complaint that she has tendered or intends to tender the borrowed funds back to Defendants. Rescission is an equitable doctrine. A claim for rescission requires a plaintiff to allege that the plaintiff can or will tender the borrowed funds back to the lender"), *citing Yamamoto*, 329 F.3d at 1167. However, other courts note – correctly – that *Yamamoto* did not *require* that rescission be conditioned on evidence or allegation of ability to tender back, but rather held merely that courts had *discretion* so to condition the remedy. *See, e.g., Pelayo v. Home Capital Funding*, Case No. 08-2030-IEG, 2009 U.S. Dist. LEXIS 44453, *19 (S.D. Cal. May 22, 2009) ("In *Yamamoto* the Ninth Circuit held that a court may alter these procedures. . . but did not hold that a rescission claim does not survive a motion to dismiss until a Court determines the right to rescind in Plaintiff's favor. . . .

Page 8 - FINDINGS AND RECOMMENDATION AND ORDER

[I]n *Yamamoto* the Ninth Circuit affirmed a district court's dismissal of an action when debtors admitted an inability to tender, . . . and held a district court has discretion to alter the rescission-tender chronology" (the court declined to exercise discretion to require the plaintiff to plead willingness or ability to tender back and denied a motion to dismiss on that basis)); *ING Bank v. Ahn*, Case No. 09-995-THE, 2009 U.S. Dist. LEXIS 60004, *5 (N.D. Cal. July 13, 2009) ("*Yamamoto* did not hold that a district court must, as a matter of law, dismiss a case if the ability to tender is not pleaded. Rather, [*Yamamoto* and its progeny] indicate that it is within the trial court's discretion to choose to dismiss where the court concludes that the party seeking rescission is incapable of performance.").

Pursuant to the plain language of both Section 1635(b) and the *Yamamoto* court's construal of it, a plaintiff need not plead willingness or ability to tender back in order to state a cognizable TILA claim for rescission. *See* 15 U.S.C. § 1635(b); *Yamamoto*, 329 F.3d at 1171. Any other conclusion would distort the plain meaning of the statutory language and undermine TILA's purpose to protect consumers in credit transactions. *See* 15 U.S.C. §§ 1635(b), 1601(a). Because Russell's failure to plead ability or willingness to tender back does not constitute failure to plead an essential element of her *prima facie* TILA rescission claim, assignee defendants' motion to dismiss should be denied.

The foregoing conclusion should not be construed to suggest that Russell will not be required to establish her willingness or ability to tender back at some stage of these proceedings. If for nothing else, *Yamamoto* certainly stands for the proposition that rescission may properly be denied to a plaintiff whose unwillingness or inability to tender back is stipulated or proven. Should the assignee defendants come forward with evidence that Russell would be unwilling or

Page 9 - FINDINGS AND RECOMMENDATION AND ORDER

unable to tender back her loan proceeds in the event she obtained rescission of the September 2006 refinancing transaction, the court will at that time consider whether to exercise its discretion to modify the procedures set forth in Section 1635(b).

## II. Statutory Damages and Attorney Fees

As noted above, Russell claims a right to rescind the September 2006 refinancing transaction based on defendant Mortgage Solutions Management's alleged failure to provide required disclosures in connection with the transaction. As against the assignee defendants Countrywide and BONY, Russell additionally seeks attorney fees and statutory damages, premised not on Mortgage Solution Management's alleged failure to disclose but rather on the assignee defendants' alleged failure to comply with their Section 1635(b) obligations within twenty days of their receipt of Russell's notice of rescission.

In her complaint, Russell expressly premises her right to attorney fees and statutory damages on 15 U.S.C. § 1640(a). Section 1640(a) provides that any "creditor" who fails to comply with, *inter alia*, the requirements set forth in Section 1635 will be liable to the affected consumer for attorney fees and costs and for statutory damages, which in the case of a transaction secured by the consumer's home amount to not less than $400 and not greater than $4,000. *See* 15 U.S.C. § 1640(a)(2)(A)(iii). The assignee defendants argue that the remedies provided in Section 1640(a) are available only against creditors, and not against assignees of creditors. *See, e.g., Brodo v. Bankers Trust Co.*, 847 F. Supp. 353, 359 (E.D. Pa. 1994) ("While [15 U.S.C.] § 1641(c) provides that the right to rescind exists even against a creditor's assignee, § 1640(a) permits only a 'creditor' to be held liable for a monetary penalty or an award of attorney's fees for a TILA violation. Neither § 1641 nor any other section provides for a statutory penalty or an

Page 10 - FINDINGS AND RECOMMENDATION AND ORDER

award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice. Rescission is therefore the only remedy against [an assignee] to which [a TILA] plaintiff is entitled."). Assignee defendants further argue that, while attorney fees and costs may be available against assignees under other provisions of TILA, the availability of these remedies as against assignees is strictly limited to cases in which the underlying violation is "apparent on the face of the disclosure statement" at issue. 15 U.S.C. § 1641(e); *see also, e.g., Brodo*, 847 F. Supp. at 359.

Russell argues to the contrary that the remedies provided for in Section 1640(a) are available against creditors and their assignees alike, relying chiefly on a decision of the Northern District of Illinois, *Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp. 2d 910 (N.D. Ill. 2002), and its numerous progeny. The *Fairbanks* court expressly found that, despite the apparent limitation of the provisions of Section 1640(a) to creditors, the remedies provided in Section 1640(a) are equally available against assignees:

> First of all, despite the use of the word "creditor" in § 1640(a)'s introductory language, it is clear from § 1640 taken as a whole that Congress intended for § 1640(a)'s remedies to apply to any creditor *or assignee* that violates TILA's provisions. If *Brodo* were correct that the remedies described in § 1640(a) were available only against the initiating creditor, there would have been no reason for Congress to include in § 1640(b) and (c) defenses to liability "under this section" (*i.e.*, § 1640) that are available to "[a] creditor *or assignee*." 15 U.S.C. § 1640(b) & (c) (emphasis added). In construing a statute, a court must read it as an integrated whole, so as to give meaning to all of its terms. *See, e.g., In re McFarland*, 84 F.3d 943, 946-47 (7th Cir. 1996) (*citing United States v. Nordic Village, Inc.*, 503 U.S. 30, 35-36, 117 L. Ed. 2d 181, 112 S. Ct. 1011 (1992)). *Brodo*'s reading of § 1640(a) does not conform to that requirement.
>
> Second, the text of § 1640(a) itself indicates that attorney's fees, at least, are available from an assignee, and not just from the originating creditor, for violating a consumer's right to rescind. Section 1640(a)(3) provides that "in the case of any successful action to enforce the foregoing liability *or in any action in which a*

> *person is determined to have a right of rescission under section 1635 of this title,* the costs of the action, together with a reasonable attorney's fee as determined by the court" is available. 15 U.S.C. § 1640(a)(3) (emphasis added). Congress' use of the disjunctive indicates that liability for attorney's fees, at least, is not limited to actions against the creditor that initiated the loan but rather applies in "any action" in which a right to rescind is determined to exist.
>
> Third, § 1641(e)(1) and its counterpart § 1641(a) plainly are not the exclusive means of imposing TILA liability on assignees. Both provisions state that a civil action may be brought against an assignee only for violations apparent from the disclosure statement "except as otherwise specifically provided in this subchapter." 15 U.S.C. § 1641(a) & (e)(1). But § 1641(c) is such an exception: it specifically provides that a customer has the right to rescind against "any assignee of the obligation," *id.* § 1641(c) (emphasis added), and not just against the more limited set of assignees described in § 1641(a) and (e)(1).
>
> Finally, denying a consumer whose demand for rescission was refused by an assignee the ability to recover attorney's fees upon successful court action to enforce her TILA rights would undermine the policies underlying the TILA and its private enforcement mechanism. The TILA provides for an award of attorney's fees to a successful consumer in order to ensure that the consumer is made whole and to encourage enforcement of the statute's requirements. *Hannon v. Security National Bank*, 537 F.2d 327, 328 (9th Cir. 1976); *Corbett v. Keene Co-operative Bank*, 498 F. Supp. 800, 802 (D.N.H. 1980); *Liberty Loan Corp. v. Boyajian*, 407 F. Supp. 308, 311 (D.R.I. 1976); *Jones v. Seldon's Furniture Warehouse, Inc.*, 357 F. Supp. 886, 887 (E.D. Va. 1973). If consumers were precluded from recovering attorney's fees in this context, they would be chilled from seeking enforcement even in meritorious cases, as it is common for TILA plaintiffs to be persons of limited means who are unable to finance expensive litigation.
>
> In sum, this Court disagrees with *Brodo* and concludes that an assignee that refuses to honor a proper demand for rescission may in fact be held liable under the TILA for attorney's fees. Certain of the reasons upon which this Court has relied to reach this conclusion likewise tend to support defendants' claim for statutory damages. But the Court need not make a definitive ruling in that regard in the present context, as Fairbanks' potential liability for attorney's fees is sufficient to permit defendants' counterclaim to survive.

*Fairbanks*, 225 F. Supp. 2d at 916-917 (emphasis original). Although the *Fairbanks* court's reasoning appears plausible at first blush, analysis of the statutory language at issue indicates that *Fairbanks* was wrongly decided.

Page 12 - FINDINGS AND RECOMMENDATION AND ORDER

First, the *Fairbanks* court incorrectly characterized the references to assignee liability contained in Sections 1640(b) and 1640(c) as necessarily implying that assignee liability was contemplated under Section 1640(a). The effect of Section 1640(b) is to shield from liability under Section 1640, 15 U.S.C. § 1607 (providing for administrative enforcement of all requirements imposed by TILA, including those specifically imposed on assignees), and 15 U.S.C. § 1611 (providing for criminal liability for any willful and knowing violation of any TILA requirement, including requirements specifically imposed on assignees) any creditor or assignee who corrects errors that might otherwise provide a basis for liability within sixty days of learning about them (and before legal proceedings are instituted). *See* 15 U.S.C. § 1640(b). Because assignees may be liable under Sections 1607 and 1611, the reference in Section 1640(b) to assignee liability does not imply that assignees are subject to liability under Section 1640(a).

Similarly, the effect of Section 1640(c) is to shield from liability under Section 1640 or Section 1635 (which, as noted above, provides for a right of rescission against creditors and assignees) any creditor or assignee whose failure to comply with a TILA obligation was unintentional and caused by a *bona fide* error "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See* 15 U.S.C. § 1640(c). Because assignees may be liable under Section 1635, the reference in Section 1640(c) to assignee liability does not imply that assignees are subject to liability under Section 1640(a).

Second, Section 1640(a)(3) simply does not provide for award of attorney fees to assignees as the *Fairbanks* court suggested. By the plain language of Section 1640(a), Section 1640(a)(3) provides that *creditors* may be liable for attorney fees in any action seeking monetary damages against a creditor or in any rescission action under Section 1635. *See* 15 U.S.C. §

Page 13 - FINDINGS AND RECOMMENDATION AND ORDER

1640(a). The fact that rescission actions may be brought under Section 1635 against assignees does not modify the fact that the liability for attorney fees provided for in Section 1640(a) – including in connection with violations of Section 1635 – is expressly limited to "creditors." *See id.*

Third, while the *Fairbanks* court correctly observed that Section 1641(c) affirms that the Section 1635 right to rescind may be exercised against assignees regardless of whether the error giving rise to such right to rescind is apparent on the face of any disclosure statement, *see* 15 U.S.C. § 1641(c), the court appears to have drawn an unjustified inference from that observation. While Section 1641(c) does establish that the right to rescission, against whomever exercised, is not conditioned on the right being facially discernable, it in no degree purports to establish any right to attorney fees or statutory damages against any person, including against assignees. Moreover, the clear gravamen of Section 1641(c) is to except a consumer's right to rescission (and *only* the right to rescission) from the facial-discernability requirement for assignee liability. The clear corollary of Section 1641(c) is that remedies *other* than the right to rescission are *not* excepted from the broadly applicable facial-discernability requirement. On final analysis, Section 1641(c) provides strong support for the conclusion opposite to the one drawn by the *Fairbanks* court: remedies such as award of attorney fees or statutory damages are unavailable against assignees except where the underlying TILA violation was facially discernable.

While I cannot but agree with the *Fairbanks* dicta to the effect that the policy interests Congress sought to promote in enacting TILA would be well served by permitting rescission plaintiffs to seek attorney fees against assignees, it is not accurate to suggest that the failure to do so would undermine those policy interests or provide a significant disincentive to consumers to

Page 14 - FINDINGS AND RECOMMENDATION AND ORDER

enforce their rights to rescission. In the general case, a plaintiff with a right of rescission enforceable against an assignee will also have the same right of rescission, as well as a right to attorney fees and statutory damages, against the creditor whose interests were assigned to the assignee, or against that creditor's successor in interest. If a successful TILA plaintiff can expect an award of attorney fees against one defendant, the lack of a right to attorney fees against a second defendant does not present an obstacle to bringing litigation to enforce the plaintiff's rights.

By contrast with the conclusions reached by the court in *Fairbanks*, my analysis of Section 1640(a) and its statutory context establishes that the liability for attorney fees and for statutory damages set forth in Section 1640(a) is expressly limited to creditors, and is not available against assignees except as otherwise specifically provided. *See* 15 U.S.C. § 1640(a) ("Except as otherwise provided in this section, any *creditor* who fails to comply with any requirement imposed under this part. . . with respect to any person is liable to such person" for actual damages, statutory damages, and attorney fees (emphasis supplied)). While assignee liability for attorney fees and statutory damages is contemplated, *see* Section 1641(e)(1), such liability is expressly conditioned on the facial discernability of the underlying TILA violation, *see* Section 1641(e). I therefore conclude that statutory damages and attorney fees are not available under TILA against assignees except where the underlying TILA violation was facially discernable from the disclosure statement containing the violation. *See, e.g., Taylor v. Quality Hyundai*, 150 F.3d 689, 694 (7th Cir. 1998); *see also Walker v. Gateway Fin. Corp.*, 286 F. Supp. 2d 965, 968-969 (N.D. Ill. 2003) (expressly repudiating the *Fairbanks* analysis); *Bills v. BNC Mortg., Inc.*, 502 F. Supp. 2d 773, 776-777 (N.D. Ill. 2007) (following *Walker* and rejecting

Page 15 - FINDINGS AND RECOMMENDATION AND ORDER

*Fairbanks*). For TILA purposes, a violation is "apparent on the face of the disclosure statement" if

    (A)    the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or

    (B)    the disclosure statement does not use the terms or format required [under any applicable TILA provision].

15 U.S.C. § 1641(e)(2).

    Here, Russell has alleged that defendant Mortgage Solutions Management provided a notice of right to rescission that was incorrectly dated. She does not allege that the error was discernable on the face of the disclosure statement, and it appears likely that this alleged error would not have been facially discernable under the standard set forth in Section 1641(e)(2). I therefore recommend that the assignee defendants' alternative motion to strike be granted and language purporting to assert the assignee defendants' liability for the remedies set forth in subparagraphs 45(b) and (c) stricken from Russell's Fourth Amended Complaint. Leave to amend Russell's pleading to restore such assertion of liability should be freely granted in the event Russell is able to allege in good faith that an error giving rise to a right to rescind the September 2006 refinancing transaction was discernable on the face of the relevant disclosure statement.

## CONCLUSION

    For the reasons set forth above, I recommend that assignee defendants' motion (#62) to dismiss and in the alternative to strike be denied to the extent it seeks dismissal of Russell's TILA claim for rescission, and granted to the extent it seeks to have language purporting to assert the

Page 16 - FINDINGS AND RECOMMENDATION AND ORDER

assignee defendants' liability for the remedies set forth in subparagraphs 45(b) and (c) stricken from Russell's Fourth Amended Complaint. Leave to amend Russell's pleading to restore such assertion of liability should be freely granted in the event Russell is able to allege in good faith that an error giving rise to a right to rescind the September 2006 refinancing transaction was discernable on the face of the relevant disclosure statement.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 6th day of April, 2010.

_____
Honorable Paul Papak
United States Magistrate Judge